UNITED STATES DISTRICT COURT
Eastern District of Virginia
Richmond Division

**DERRICK WILLIAMS**

    **Plaintiff,**

v.                  Civil Action No.: 3:24-cv-00696

**GORDON J. PAINTER**

    **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFEDNANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW the Plaintiff, Derrick Williams ("Plaintiff" or "Mr. Williams"), by counsel, and submits this memorandum in Opposition to Defendant's Motion to Dismiss of Plaintiff's Second Amended Complaint, and in support thereof, Plaintiff incorporates his Second Amended Complaint and states as follows:

**INTRODUCTION**

This matter comes before the Court again on Defendant's Motion to Dismiss. Despite a very lengthy Memorandum, the Defendant's argument boils down to one issue, whether on its face were his actions objectively reasonable allowing him the protection of qualified immunity. The Defendant mostly repeats all the allegations in Plaintiff's second amended complaint and then tries to offer factual arguments challenging whether those facts are materially in dispute, essentially attempting to turn their motion into one for summary judgement rather than a motion to dismiss.

None of the additional facts that have been put forward by the Defendant demonstrate objective reasonableness nor do they change any of the well plead facts in the Plaintiff's Second Amended Complaint. Rather than focusing on the plead facts and whether an argument exists under the Graham factors, they offer a great deal of conjecture and speculation as to the

1

reasonableness of the Defendant's actions, which is for discovery to flush out and for a trier of fact to decide. Many of the additional facts not plead and raised by the Defendant also are more than just a different interpretation, they are squarely in dispute of which it is up to a trier of fact to then determine what truly occurred.

Finally, the Defendant again attempts to bring in body camera footage, which was not part of the Plaintiff's complaint, was not an Exhibit of the complaint and uses it again to try to make factual interpretations of allegations within the complaint.

## LAW

### A. Legal Standard for Rule 12(b)(6) Motions.

To withstand Rule 12(b)(6) scrutiny, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge [his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *Georgia Carry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, supra 550 U.S. at 555.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] **does not** resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-

pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears **certain** that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id. Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a **civil rights** complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**B. Qualified Immunity and the Objective Reasonable Standard.**

Defendant Painter argues he is entitled to qualified immunity based on the facts presented from his Body Worn Camera footage of the incident. This contention is obviously disputed by the Plaintiff and is the fact at issue sought to be resolved by the fact finder, in this case, the jury. It is the Plaintiff's position that the merits of this case should be argued at trial and cannot be properly adjudicated by and through a Motion to Dismiss.

Qualified immunity does not apply where "it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar v. Abbasi*, 137 S. Ct. 1843 at 1867, 198 L. Ed. 2d 290 (2017). The standard is one of objective reasonableness, "Whether a reasonable officer could have believed [the conduct at issue] to be lawful, in light of clearly established law and the information the . . . officer possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Police Departments have **relied** upon General Police Orders (GPO) or General Standing Orders (GSO) in Defenses before the Courts to establish that their actions were objectively reasonable. This is obvious since the orders are issued by the Chief officers of their department. In *City of Cleveland v. Graham*, 2024-Ohio-336, 235 N.E.3d 487 (Ct. App.), the Court considered the General Police Orders issued with regard to the use of force. *Id.* at 498-495. In that case "With respect to the first factor, Officer Samis testified that he followed department procedures, and that K-9 Riley performed according to training during the arrest." *Neeley v. Samis,* 183 F. Supp. 2d 672, 680 (D. Del. 2002). The Court in *Neeley* considered department policies when evaluating objective reasonableness of the officer's actions.

Applying qualified immunity on a motion to dismiss involves a two-part analysis: first, whether the evidence, "[t]aken in the light most favorable to the party asserting the injury ..., shows the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); and, second, whether the right at issue, when the evidence is viewed in the light most favorable to the plaintiff, was " 'clearly established' " at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 655-56, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) *256 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

Once a claim of qualified immunity is raised, the court may then require a Plaintiff to file a responsive pleading under Rule 7 of the Federal Rules of Civil Procedure tailored to the assertion of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427 at 1433 (5th Cir. 1995). Plaintiff is not required to anticipate this defense in the pleading of his or her original complaint. *Id*. at 1430. If some minimal discovery is necessary to uncover facts to be relied upon or raised in support of a Motion for qualified immunity or Response thereto, the court may order such limited discovery as necessary. *Id*. at 1432, 1434.

In other words, the plaintiff must not only allege 1) the deprivation of an actual right, but also 2) that this right was "clearly established" at the time of the alleged violation. *Shipp v. McMahon*, 2000 WL 178679, (5th Cir. 2000). The second hurdle requires the plaintiff to show that the officer's conduct was not objectively reasonable at the time of the incident. Plaintiff Williams alleges that Defendant Painter violated his Fourth Amendment rights by applying excessive force. To prevail on an excessive-force claim, he must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)). *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

## ARGUMENT

Plaintiff Williams' right to be free from the application of excessive force under the Fourth Amendment is clear. Applying the facts as plead demonstrates that Defendant Painter's actions were not objectively reasonable under the circumstances. The question that always exists in the context of excessive force is when is force reasonable to be applied and the Courts have consistently held that when the alleged suspect neither made any threats nor is fleeing, then force is objectively unreasonable, just is the case here. First, we should look at what the Court in *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) discussed when applying force and with a K9 which laid out a good illustration of when force should be applied. Citing the case:

> In *Cooper v. Brown*, Cooper's right was clearly established. Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced. "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal quotation marks omitted). In *Bush*, we held that it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee "was not resisting

5

Case 3:24-cv-00696-REP    Document 36    Filed 03/20/25    Page 6 of 13 PageID# 350

arrest or attempting to flee." *Id.* Similarly, we declared in *Newman*, 703 F.3d at 762, that tasing an arrestee was objectively unreasonable where "[t]he videos d[id] not show Newman attempting to strike either officer, holding a weapon, or even reaching for his waistband," and "[t]he officers did not try to warn each other . . . that Newman had a weapon, which might be expected if either officer truly thought that at the time."

In the same way, Cooper was not attempting to resist arrest or flee, and Brown had no reason to think that he posed an immediate threat. Moreover, the fact that *Bush* and *Newman* are not dog-bite cases does not shield Brown. " Lawfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Id.* at 763-64 (footnotes omitted). Thus, Brown had "fair warning" that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable.

This comports with decisions of sister circuits that have considered similar facts. In *Priester v. City of Riviera Beach*, 208 F.3d 919, 923-24 (11th Cir. 2000), the Eleventh Circuit held that it was objectively unreasonable for officers to allow a dog to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest. The Eleventh Circuit confronted the question a second time in *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012). There, a man was pulled over for a traffic violation and fled on foot. When the officers encountered him, he was lying on his stomach with his hands exposed. The man verbally surrendered, shouting, "[Y]ou got me. I only ran because of my license." Nonetheless, the officers released their dog and permitted it to continue biting him for five to seven minutes. *Id.* at 1292-93. The court held that the officers' conduct violated the constitution. Its application of the *Graham* factors is instructive: *Cooper v. Brown*, 844 F.3d 517, 524-25 (5th Cir. 2016).

The *Cooper* case is instructive in the application of the *Graham* factors and that a K9 is an instrumentality to be considered when reviewing the force used by an officer. Analogous to the *Cooper* and the cases the Court cites is the fact that Mr. Williams showed no aggression, was not a risk, was not fleeing nor could Mr. Williams even flee as he was in an apartment, that the police had surrounded and contained. As we continue our analysis, we should apply the *Graham* factors to the case at hand and the facts that are known and plead.

In *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989), the Court established a three part test in determining the objectiveness of an officer's actions in the context of an

6

excessive force claim under the Fourth Amendment. These factors are: 1. The severity of the crime at issue, 2. Whether the suspect poses an immediate threat to the safety of the officers or others, and 3. Whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

I. **Severity of the Crime.**

The Defendant attempts to mislead the court by claiming that it was believed that a violent crime was in progress. Of course, the police responded to the scene with their lights and sirens, that is how police respond to calls they receive, and despite the fact that there were several officers on scene as the Defendant points out, that is not instructive of the nature of the crime nor whether any threat existed. What is instructive is the actual call they received.

According to the Plaintiff's Ex. A, Doc. 32-1 the CAD sheet, Defendant Painter was responding to a call to a person in a home, the person was in a bed with a blanket and no weapons were seen. That is the extent of the report. When a person is committing a burglary, they are not in a home, with a locked door with the chain on it, asleep in a bed, wrapped in a blanket. Common sense, not even utilizing any experience as a police officer, would have told Defendant Painter that this is not a burglary in progress. In fact, according to VA. Code sec. 18.2-92, the statute explicitly states, "If any person break and enter a dwelling house while said dwelling is occupied, either day or nighttime, with the intent to commit any misdemeanor except assault and battery or trespass, he shall be guilty of a Class 6 felony. In this case there was no evidence that Mr. Williams had broken and entered into the premises, he was sleeping and committing no crime and at worst he was trespassing by sleeping in the dwelling of which trespass is excluded from being considered a felony.

Based upon the report to Defendant Painter and the evidence at the scene there were no facts to lead him to any reasonable basis that a burglary was in progress, at best it would be trespass, which is a misdemeanor that would not justify deadly force.

Further, if we look at the at the incident report, Plaintiff's Exhibit B, Doc. 32-2, the leasing office told Officer Claud that before the police were called, the woman who called the police did not have a key to the unit, she came in for a spare key and admitted that she knew "my ex-boyfriend moved somebody into my house". She asked the office to call the police, and the office refused. If the officers had just stopped by the leasing office before setting up a perimeter and going in with a K9, they would have known that the complainant had lied to them and that Mr. Williams, was likely lawfully inside.

Based upon the objective facts present at the time, there was no reasonable basis to believe that a serious crime was at hand. The only potential crime they had evidence of was trespass and there was no evidence of any violence or violent crime.

## II.    Whether the Suspect Poses an Immediate Threat to the Safety of the Officers or others.

With regard to the second part of the test, the Defendant argues that he was justified because he was allegedly investigating a burglary, this is not enough. Of course, when an officer has contact with a suspect, they have that contact because they are investigating a crime, there must be more than just an investigation to justify force. As we have seen in the cases cited throughout this brief, there must be a threat to safety by use of a weapon, flight or direct threat. None of that existed here. There was no report of a weapon, see Plaintiff's Ex. A, Doc. 32-1. We know there was no act of any violence or threat of violence to others. *Id.* The suspect was asleep in a bed with a blanket. *Id.* The Defendant does not

dispute that there was no threat made to the officers. The area was secured by a perimeter as the Defendant points out and there were no other persons in the apartment. Given these facts, there was no reasonable basis to use force on Mr. Williams. The use of a K9, just like the use of a taser or another instrument was objectively unreasonable.

Further, to illustrate what are reasonable actions for an officer to follow, it is reasonable to look at the orders contained in the Chesterfield County Police Department Operations Manual (hereinafter, Police Manual), Ex. D, Doc. 32-4. The Police Manual specifically instructs without any ambiguity when an officer can use a police canine, justification for such use, commands that must be given and conditions for releasing a canine. Rather than rewrite all of the same plead factual allegations again and all of the violations committed by the Defendant, I reference for the Court's attention paragraphs 67-72 of Plaintiff's Second Amended Complaint, Doc. 32. In addition, Plaintiff also cites the organization that certified the Defendant on how to use his K9 and he violated his own training, see paragraphs 77-80 of Plaintiff's Second Amended Complaint, Doc. 32.

Defendant Painter tries to justify his use of the canine by stating he called out a verbal warning. Despite a warning, he needed to have a reasonable basis to use force, which we have established, he had none. Defendant Painter did not give clear audible commands despite what he alleged. The Plaintiff could not hear the commands as he was in another room and Defendant Painter made no attempt to acquire the target in order provide proper verbal warnings. This taken in conjunction with the fact that Mr. Williams was asleep in the bedroom, which Defendant knew, made any attempt at a warning ineffective. He also gave no opportunity for anyone to respond.

### III. Whether the Suspect is Actively Resisting Arrest or Attempting to Evade Arrest by Flight.

There are no allegations or evidence that Mr. Williams ever resisted arrest, nor did he ever evade arrest or flee. In fact, he could not have fled since a complete permitter was established as argued by the Defendant.

### IV. Injury

Finally, with regard to injury, there is also no question in this regard. Mr. Williams was bitten by the K9. As plead, he has sustained serious and permanent injury. It is plead that his injury is permanent and in fact he does have scarring and nerve damage, all of which will be supported through medical testimony. Pictures in Ex. C of the Second Amended Complaint, Doc. 32-3.

### IV. Consideration of the Body Camera Video.

Federal Rule of Civil Procedure 12(d) ordinarily prohibits a court from considering evidence outside the pleadings on a motion to dismiss, unless the court converts the motion to one for summary judgment. Nonetheless, a court may consider a *document* outside the complaint at the motion to dismiss stage when the document is "integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. And if the plaintiff adopts the contents of an integral and authentic document, a court can credit "the document over conflicting allegations in the complaint." *Id.* at 167. *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).

The Defendant attempts to claim that the video body camera worn by the Defendant is an integral part of the Plaintiff's Amended Complaint and although not cited in the Amended Complaint, should be considered. There is nothing to support that is the case.

The Plaintiff adopts as Exhibits those items that are integral to the Amended Complaint and a body camera is not one of them. All the facts as plead come from a multitude of sources and statements, all subject to discovery.

The Court in Doriety established when the court can consider a video at the motion to dismiss stage; accordingly, we hold that a district court can consider a video submitted at the motion to dismiss stage when (1) the video is "integral" to the complaint and its authenticity is not challenged, but (2) only to the extent that the video "clearly depicts a set of facts contrary to those alleged in the complaint," or "blatantly contradicts" the plaintiff's allegations, rendering the plaintiff's allegations implausible. *See Saalim*, 97 F.4th at 1002. *Doriety v. Sletten*, 109 F.4th 670, 679-80 (4th Cir. 2024).

With regard to the first factor of the *Doriety* test, there are essentially two facts the Defendant points to that they claim are integral. The first is the audibility of the commands and the second is that 26 seconds that elapsed. Those facts are well plead and are corroborated by the Plaintiff's own memory and statement that he could not make out anything being said and his next actions, all which is subject to deposition if the Defendant would like to know what he heard and what his actions were. These two allegations are factors to the case and the video does not make them integral nor is the video even necessary.

Applying the second factor of the *Doriety* test, the video would have to clearly depict a set of facts contrary to those alleged in the complaint, this does not exist. The video is consistent with the pleading that a short time passed of only 26 seconds before the Plaintiff was attacked and the video also shows that the Defendant was in the hallway, behind a threshold, that the Plaintiff was not anywhere in the room the Defendant was looking, corroborating the Plaintiff's allegation as plead that the commands were not audible.

Therefore, pursuant to *Doriety*, since the video is not integral in establishing the facts plead by the Plaintiff nor does the video contradict what has been plead, it should not be considered by the Court.

## CONCLUSION

**WHEREFORE** for the foregoing reasons, Plaintiff Derrick Williams requests that the Court Deny Defendant Gordon Painter's Motion to Dismiss Plaintiff's Second Amended Complaint.

    Respectfully Submitted,
**DERRICK WILLIAMS**

Electronically Signed
By:/s/ *Phillip S. Georges*
Phillip S. Georges, Esq.
VSB #66596
*Attorney for Derrick Williams*

**Phillip S. Georges, PLLC**
801 18th Ave. S
Nashville, TN 37203
T: 615-486-4115 x. 700
F: 615-576-8668
E: Phil@wolfpacklawyers.com

CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing along with Exhibits 1A-5A was sent via the ECF filing system and Email, on the 20th day of March 2025 to the following:

JulieA. C. Seyfarth (VSB #46207)
Senior Deputy County Attorney
Katherine C. Gill (VSB #87409)
Senior Assistant County Attorney
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, Virginia 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
gillk@chesterfield.gov
*Attorneys for Defendant Gordon J. Painter*

                Respectfully Submitted,
                PHILLIP S. GEORGES, PLLC

                Electronically Signed
                By:/s/ *Phillip S. Georges*
                Phillip S. Georges, Esq.
                VSB: 66596
                801 18TH Ave. S.
                Nasvhille, TN 37203
                Phone: 615-486-4115 x. 700
                Fax:    615-576-8668
                phil@wolfpacklawyers.com
                *Attorney for Plaintiff Derrick Williams*