IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK WILLIAMS,

    Plaintiff,

v.                                                        Civil Action No.: 3:24-CV-00696

GORDON J. PAINTER,

    Defendant.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

COMES NOW Gordon J. Painter ("Corporal Painter"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7(F) and for his Reply Memorandum in Support of his Motion to Dismiss the Second Amended Complaint, states as follows:

INTRODUCTION

I.    The BWC Videos and Exhibits are Properly Before the Court for Consideration on Motion to Dismiss.

Plaintiff's Memorandum in Opposition to Corporal Painter's Motion to Dismiss the Second Amended Complaint ("Memorandum in Opposition") does not engage in the *Doriety* analysis that was directed by the Court in its Memorandum Opinion denying Corporal Painter's Motion to Dismiss the First Amended Complaint ("Memorandum Opinion"). (*Compare* Mem. in Opp'n to Mot. to Dismiss Sec. Am. Compl, ECF No. 36 *with* Mem. Op., ECF No. 28). In fact, Plaintiff did not oppose three of the four arguments made by Corporal Painter which establish how the body worn camera ("BWC") videos are integral to the Second Amended Compliant. When the *Doriety* analysis is applied to the allegations in the Second Amended Complaint, it is evident that the two BWC videos attached to Corporal Painter's Motion to Dismiss the Second Amended Complaint

1

("Motion to Dismiss"), as well as the Exhibits attached to Plaintiff's Second Amended Complaint, are integral to the Second Amended Complaint.

Furthermore, Plaintiff did not even attempt to refute Corporal Painter's detailed analysis set out on pages five through ten of his Memorandum in Support of Motion to Dismiss the Second Amended Complaint ("Memorandum in Support") which establishes with pinpoint specificity how and where Corporal Painter and Officer Wilson's BWC videos and the Exhibits to the Second Amended Complaint blatantly contradict factual allegations in the Second Amended Complaint. (*See* Mem. in Supp. of Mot. to Dismiss Sec. Am. Compl., ECF No. 34 at pp. 5-10.)

II. <u>Corporal Painter is Entitled to Qualified Immunity on Motion to Dismiss.</u>

Plaintiff's Memorandum in Opposition fails to substantively address the arguments and merits of Corporal Painter's Motion to Dismiss. It is nothing more than a legally unsupported plea to let a jury decide this case. Plaintiff did not endeavor to consider the facts know to Corporal Painter, as an objectively reasonable officer on scene, as required when considering qualified immunity and the factors established by *Graham v. Connor*. *See* 490 U.S. 368, 396-397 (1989). Moreover, Plaintiff did not cite a single controlling case to support his conclusory allegation that the undisputed material facts in this case constitute a violation of his Fourth Amendment rights. Nor did he attempt to rebut Corporal Painter's argument that, in the alternative, the law was not clearly established such that Corporal Painter was on notice that releasing a police K-9 to seize a reported breaking and entering and burglary suspect, after giving numerous commands, would be a violation of the suspect's Fourth Amendment rights. Instead, Plaintiff has seemingly based his allegation that Corporal Painter, one of 14 officers involved in the emergency response at issue, violated Plaintiff's Fourth Amendment rights solely on the fact that Corporal Painter has been named in two other lawsuits that challenge law enforcement's use of force. (*See* Sec. Am. Compl.,

ECF No. 32 at ¶¶ 96, 104, 114; Ex. B at p. 1.)  However, that is neither a relevant factual allegation nor the applicable standard of review in this case and certainly does not allow Plaintiff's claims to survive Corporal Painter's Motion to Dismiss.

## STANDARD OF REVIEW

I. The BWC Videos of Corporal Painter and Officer Wilson, As Well As the Exhibits to the Second Amended Complaint, Are Properly Before This Court For Consideration on Corporal Painter's Motion to Dismiss Asserting His Entitlement to Qualified Immunity.

In support of his Motion to Dismiss, Corporal Painter relies on the contents of the Exhibits attached to the Second Amended Complaint, as well as the BWC videos of Corporal Painter and Officer Wilson, which clearly depict the material facts of the police response in question.  (*See* ECF No. 34, Exs. 1, 2.)  It is well established in the Fourth Circuit that a court may consider documents attached as exhibits to or incorporated into the complaint on a Rule 12(b)(6) motion to dismiss, and to the extent there is a "conflict between the bare allegations of the complaint and any attached exhibit[s] . . ., the exhibit[s] prevail[ ]." *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020), *aff'd sub nom. Lawhon v. Mayes*, No. 20-1906, 2021 WL 5294931 (4th Cir. Nov. 15, 2021) (internal citations and quotation marks omitted).  *See Goines v. Valley Comty. Servs. Bd.*, 522 F.3d 159, 164-67 (4th Cir. 2016).  Moreover, as discussed in the Court's Memorandum Opinion and in Corporal Painter's Memorandum in Support, a court may also consider a video recording submitted at the motion to dismiss stage when such video is "'integral' to the complaint and its authenticity is not challenged," but "only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 679-80 (4th Cir. 2024) (citing *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)).  Accordingly, the Court must consider the arguments made by the parties that are pertinent

3

to the *Doriety* analysis to determine what is properly before the Court and how it may be considered by the Court on Motion to Dismiss.[1] (*See* ECF No. 28.)

      A.    <u>Plaintiff has conceded that the Exhibits to the Second Amended Complaint are authentic and integral.</u>

Plaintiff does not contest that the Exhibits attached to the Second Amended Complaint are authentic and integral to the Second Amended Complaint and may be considered by the Court at this stage of the proceedings. (*See* ECF No. 36 at p. 11.)

      B.    <u>Plaintiff fails to address three of the four arguments made by Corporal Painter establishing that the two BWC videos are integral to the allegations of the Second Amended Complaint. Therefore, he has conceded that the BWC videos are integral.</u>

In its Memorandum Opinion, the Court directed the parties to provide "analysis of what the term 'integral' actually means and how particular provisions of the video . . . actually demonstrate that [it is] indeed integral" to the Second Amended Complaint. (ECF No. 28 at p. 7.) Accordingly, Corporal Painter identified four different allegations in the Second Amended Complaint – Paragraphs 20, 24, 25, and 30, all of which contained specific factual details that could only have been known to Plaintiff or his lawyer after reviewing the BWC videos in question – and Corporal Painter explained how and why the BWC videos are integral to those allegations. (ECF No. 34 at pp. 3-4.) *See Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) ("plaintiff's complaint implicitly relies on the videos by recounting facts that could only be known to him by watching the videos.").

In his Memorandum in Opposition, however, Plaintiff ignored the arguments Corporal Painter made as to Paragraphs 20, 24, and 25 and, instead, only addressed the relation of the BWC

---

[1] Plaintiff did not challenge the authenticity of Corporal Painter or Officer Wilson's BWC videos in his Memorandum in Opposition, so it is not discussed by Corporal Painter this Reply. (*See* generally ECF No. 36.)

4

videos to the factual allegations in Paragraph 30. (*See* ECF No. 36 at p. 11.) Plaintiff's failure to respond to Corporal Painter's arguments as to the integral nature of the BWC videos as to Paragraph 20, 24 and 25 of the Second Amended Complaint, particularly after the Court has previously directed the parties on this point, ought to be considered a concession as to the integral nature of the BWC videos. (ECF No. 28 at pp. 7-8 ("And, the Plaintiff simply does not address the issue at all.").) The Fourth Circuit, in *Goines*, similarly addressed this issue noting, "because Goines does not argue otherwise, we will assume without deciding that the Incident Report was integral to the complaint. And because there is no question about the authenticity of the Incident Report, we will therefore assume that the district court properly treated the Incident Report as if it had been attached to the complaint." 522 F.3d at 166. Therefore, this Court should treat the argument as to the integral nature of the BWC videos, as established through their relationship to Paragraphs 20, 24, and 25, as conceded. *See Williams v. Newport News Sch. Bd.,* No. 4:20-cv-41, 2021 WL 3674983, at *17 (E.D. Va. Aug. 18, 2021) (citing *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-cv-771, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

    C.    <u>The allegation in Paragraph 30 of the Second Amended Complaint that precisely 26 seconds elapsed can only be determined by Plaintiff's direct reliance on the BWC videos.</u>

Plaintiff argues that the BWC videos are not "integral" to the allegation that 26 seconds elapsed between Corporal Painter's entry into the apartment and his K-9's detainment of Plaintiff because the time is "corroborated" by the Plaintiff's own memory. (ECF No. 36 at p. 11.) First, that statement prompts the question, "what is the Plaintiff's memory corroborating?" The answer

5

is: the time established by the BWC videos. That is because the timeline of what transpired is integral to the Fourth Amendment claim pled in the Second Amended Complaint.

Moreover, to the extent Plaintiff is representing to this Court that his independent recollection, without relying on the BWC videos he has reviewed, is that precisely 26 seconds elapsed, such representation is disingenuous. In his Memorandum in Opposition to Corporal Painter's Motion to Dismiss the First Amended Complaint, Plaintiff stated in his pleadings that the timeline of events of what transpired in the apartment was deciphered from the Officer Wilson's and Corporal Painter's BWC videos. (Mem. in Opp'n to Mot. to Dismiss First Am. Compl., ECF No. 19 at p. 10 ("We know from Officer Wilson's body camera . . . and from Officer Painter's body camera . . . that Defendant Painter was behind the threshold, crouched down. . . [l]ooking at [Officer Painter's body camera], it was 33 seconds from the time Defendant Painter released the K9 to Mr. Williams getting bitten . . . .").) Those are precisely the two BWC videos that Corporal Painter provided in support of his Motion to Dismiss.

Furthermore, to the extent Plaintiff's representation is that he now recalls from his memory alone that precisely 26 seconds elapsed from the time Corporal Painter released K-9 Scout into the apartment and issued his first warning to Plaintiff to the time K-9 Scout apprehended Plaintiff undercuts the veracity of several of the other factual allegations in the Second Amended Complaint. For example, one of the primary allegations Plaintiff has made throughout the several iterations of his complaint, including in his Second Amended Complaint, is that Corporal Painter's commands were "inaudible," "muffled," and that "Mr. Williams could not hear what was being said." (*See* ECF No. 32 at ¶¶ 22, 23, 24, 25, 26, 30, 69, 78.) Plaintiff cannot have it both ways. It can either be argued that Corporal Painter's commands were audible and heard by Plaintiff, who then, instead of immediately exiting the bedroom as instructed by police to do, remained in the

6

bedroom and counted the precise number of seconds before he finally emerged, or that Corporal Painter did not give audible commands and Plaintiff relied on the BWC videos to determine the precise amount of time that lapsed between Corporal Painter's entry into the apartment and the K-9's apprehension of Plaintiff. In any event, the BWC video is clearly integral to the timeline of the seizure at issue, and therefore should be considered by the Court in ruling on Corporal Painter's entitlement to qualified immunity and Motion to Dismiss.

> D.  Plaintiff fails to address the blatant contradictions that exist between the Second Amended Complaint and the contents of the Exhibits and BWC videos, which were specifically set out by Corporal Painter in his Memorandum in Support. And, in the one sentence where Plaintiff addresses the issue of blatant contradiction, he erroneously applies the standard.

As outlined above, because the BWC videos and Exhibits are authentic and integral to the Second Amended Complaint, the Court should consider the BWC videos and the Exhibits to the extent they "blatantly contradict" Plaintiff's factual allegations in the Second Amended Complaint or "clearly depict[ ] a set of facts contrary to those alleged in the complaint." *Doriety*, 109 F.4th at 679 (citing *Saalim*, 97 F.4th at 1002). Following the Court's directive that the parties "confront the test established in *Doriety* which requires a determination of the nature and extent of the inconsistency [of the videos and the factual allegations] and whether or not [the videos] blatantly contradict[ ] the allegations" in the Second Amended Complaint, Corporal Painter closely analyzed each fact alleged by Plaintiff and described the inconsistency, showing the blatant contradiction, between the Second Amended Complaint and the contents of the BWC videos and Exhibits. (*See* ECF No. 28 at pp 7-9; ECF No. 34 at pp. 5-10.) Corporal Painter also highlighted how the BWC videos, like the video in *Scott*, show and "tell quite a different story" than the version told by Plaintiff. (*See* ECF No. 34 at p. 10 (relying on *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Doriety*, 109 F.4th at 679-80).)

Plaintiff has not responded to the detailed portion of Corporal Painter's Memorandum in Support which outlines the blatant contradictions between the Second Amended Complaint and BWC vidoes and Exhibits. (*Compare* ECF No. 34 at pp. 5-10 *with* ECF No. 36.) Instead, Plaintiff, in only one sentence, stated that the BWC videos are consistent with Paragraphs 20, 24, 25, 30, which are the paragraphs Corporal Painter relied on for demonstrating how the BWC videos are *integral* to the Second Amended Complaint. (*See* ECF No. 36 at p. 11.) Plaintiff's statement misses the point and misconstrues the law. Once a video is considered integral to the complaint, and its authenticity is not challenged, the video can be used to directly contradict *any* of the factual allegations in that complaint, not just the facts to which that video is integral. *See Doriety*, 109 F.4th at 679-80; *Goines*, 822 F.3d at 167. Again, Plaintiff did not engage in the "careful analysis that must ensue in the briefing" and did not refute the five and a half pages of citations that demonstrate the blatant contradictions. (ECF No. 28 at p. 8.) Therefore, the BWC videos and Exhibits prevail on those points. *See Doriety*, 109 F.4th at 679-80 (citing *Saalim*, 97 F.4th at 1002).

The Court can and should consider the BWC videos and Exhibits at the motion to dismiss stage and in ruling on Corporal Painter's entitlement to qualified immunity. *See Goines*, 822 F.3d at 167-69; *Doriety*, 109 F.4th at 679-80. Where there is conflict between the factual allegations and the BWC videos and Exhibits, the exhibits shall prevail. *See id.*

## ARGUMENT

I. <u>The Undisputed Material Facts Demonstrate that Corporal Painter is Entitled to Qualified Immunity on Motion to Dismiss.</u>

Like in response to Corporal Painter's Motion to Dismiss the First Amended Complaint, Plaintiff contends, again, without any supporting legal authority, that whether Corporal Painter's actions were objectively reasonable, and therefore whether he is entitled to qualified immunity, is a question that should be left to the jury. This contention, however, is contrary to United States

Supreme Court precedent on qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation."). First, as qualified immunity is immunity from suit, rather than a defense to liability, it should be evaluated before a defendant is required to proceed through the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Second, there are no material facts relevant to the objective reasonableness determination that are legitimately in dispute because where there is any conflict, had Plaintiff specifically identified any, the facts as seen and heard on the BWC video and in the Exhibits attached to the Second Amended Complaint prevail.

Given the comprehensiveness of the audio and video of the BWC videos that directly contradict the factual allegations in Plaintiff's Second Amended Complaint, as well as the Exhibits attached to the Second Amended Complaint, this case is uniquely positioned to show the Court the entirety of the material facts and circumstances surrounding the incident at issue at an early stage of this litigation. These exhibits demonstrate that as a matter of law and based on the totality of the circumstances, Corporal Painter's actions were objectively reasonable and there was no violation of any clearly established constitutional right.

    A.    <u>In contravention of *Graham*, Plaintiff's objective reasonableness argument is made with the benefit of hindsight and is not from the perspective of a reasonable officer on scene at the time the events unfolded.</u>

When analyzing an officer's use of force under the Fourth Amendment and its reasonableness standard, "reasonableness is evaluated from the officer's perspective in recognition of the fact that officers cannot be expected to respond to information they did not possess at the time they acted . . . ." *Melgar ex. rel. Melgar v. Greene*, 593 F.3d 348, 355 (4th Cir. 2010) (internal citations omitted). When determining whether an officer's actions were objectively reasonable,

9

the Court "may not employ the 20/20 vision of hindsight." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham v. Connor*, 490 U.S. 368, 396-97 (1989)). Plaintiff's Memorandum in Opposition disregards this precedent and instead analyzes Corporal Painter's actions from the perspective of a lay person and with the benefit of 20/20 hindsight.

Plaintiff focuses on what he believes the responding officers, and in particular, Corporal Painter, should have known at the time entry was made into the apartment in question, as opposed to what was actually known by the officers at that time. (*See* ECF No. 36 at pp. 7-8.) For example, Plaintiff relies on the Incident Report attached as Exhibit B to the Second Amended Complaint, quoting excerpts of the report that contain information obtained by officers *after* entry was made into the apartment and the suspect was detained. (*See* ECF No. 32, Ex. B at p. 3 (Officer Claud's narrative states that he went to the leasing office after the suspect was detained).) However, Plaintiff fails to point out or recognize what is relevant—that this same Incident Report also includes a narrative by Corporal Painter stating what was known by Corporal Painter at the time he entered the apartment in question—he was dispatched for a "breaking and entering in progress," and he was told the complainant found an unknown male naked in her back bedroom, no one was supposed to be in the apartment, and that the complainant was the only person on the lease. *Id.* Further, the CAD Report allows us to see what information was reported by the complainant to 911 and then relayed by the ECC dispatcher to the responding officers. (ECF No. 32, Ex. A.) This is the information that the officers properly and legally relied upon.

Simply put, Plaintiff seeks to hold one of 14 responding officers accountable because he does not agree with the crime the complainant reported to both 911 and directly to the responding officers. Plaintiff's disagreement with the complainant, however, is not what is at issue here. This case was brought only against Corporal Painter and challenges only his law enforcement actions.

10

Therefore, the question for this Court is whether Corporal Painter's actions were objectively reasonable at the time based on the totality of the circumstances that existed and from the perspective of an officer on scene. Not only do the indisputable facts shown and heard on the BWC videos and Exhibits establish the objective reasonableness of Corporal Painter's actions, but the fact that an on-scene Sergeant called for Corporal Painter to run the K-9 and the fact that a number of other officers had lethal and less-than-lethal cover on the perimeter because of the nature of the call and safety threat also demonstrate the objective reasonableness of Corporal Painter's decision to deploy his K-9 after issuing numerous verbal warnings to the suspect.

> B. <u>Plaintiff incorrectly relies on local law enforcement department policy to analyze whether Corporal Painter's actions were objectively reasonable under the Fourth Amendment.</u>

Despite the clearly established factors in *Graham*, Plaintiff relies on "General Police Orders" or "General Standing Orders" as a basis for concluding Corporal Painter's actions were not objectively reasonable. (*See* ECF No. 36 at p. 3-4.) Under Fourth Circuit precedent, however, internal department policies and procedures, or "private rules," do not set the standard for analysis of an officer's use of force under the Fourth Amendment. *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) ("'[a] person cannot, by the adoption of private rules, fix the standard of his duties to others . . . [c]learly, the Virginia rule is sufficiently bound-up with state policy so as to require its application in federal court."); *see Murphy v. United States*, 383 Fed. Appx. 326, 335 (4th Cir. 2010); *Zilka v. United States*, No. 23-1961, 2024 WL 4211620, at *1 (E.D. Va. Sept. 17, 2024); *Lucas v. Shively*, 31 F. Supp. 3d 800, 814 (W.D. Va. 2014) ("violations of internal police protocols do not automatically translate into violations of a person's constitutional rights").

Further, the Chesterfield County Police Department Canine Teams Policy[2] relied upon by Plaintiff simply restates the legal standard and *Graham* factors for claims of excessive force under the Fourth Amendment.  (*See* ECF No. 32, Ex. D.)

It is also noteworthy that in the Second Amended Complaint, Plaintiff alleges that Corporal Painter acted contrary to training from the United States Police Canine Association, Inc. ("USPCA"), which is not applicable in this case and is not the certifying organization for the Chesterfield County Police Department.  (*See* ECF No. 32 at ¶¶ 60-61.)  Plaintiff fails to address the relevance of or even explain his reliance on this USPCA training in his Memorandum in Opposition.

Again, Plaintiff's Opposition does not attack the substantive merits of the Motion to Dismiss or provide meaningful legal analysis of the issues.  Rather, he attempts to throw whatever he can at the Court, whether it be inapplicable policy or training from an organization that does not control the Court's analysis just to see what, if anything, might stick.  All without regard for the actual evidence and facts of the case at hand.  That is simply not the standard applicable to allegations made in pleadings filed with this Court and is not sufficient to overcome Corporal Painter's Motion to Dismiss.

C.   Plaintiff incorrectly concludes that the *Graham* factors weigh in his favor.

In his Memorandum in Opposition, Plaintiff argues that the crime to which Corporal Painter was responding when he and his K-9 entered the apartment in question was a misdemeanor

---

[2] Exhibit D is the Chesterfield County Police Department Police Canine Teams Policy, effective March 12, 2024.  It is not "General Police Orders" or "General Standing Orders," as portrayed by Plaintiff.  Further, as pointed out by Corporal Painter in his Memorandum in Support, the policy attached as Exhibit D has an effective date of March 12, 2024, and therefore is not a policy that was in place at the time of the incident in question.  Plaintiff fails to address this deficiency in his Memorandum in Opposition.

trespass, and therefore was not severe enough of a crime to justify deployment of the K-9 (or any other use of force).³ (*See* ECF No. 36 at p. 8.) This is directly contradicted, however, by the BWC videos and Plaintiff's own Exhibits, including the incident description listed on the CAD Report, which describes the criminal activity as "BURG" and "BREAKING & ENTERING." (ECF No. 32, Ex. A.) Further, Corporal Painter's narrative in the Incident Report states Corporal Painter "was dispatched to assist patrol with a Break and Entering in progress." (ECF No. 32, Ex. B.) It is an undisputed fact that the crime in progress to which Corporal Painter responded to when he entered the apartment with his K-9 was a burglary or a breaking and entering in progress, and burglary has been recognized by both the courts and the law as a violent crime. *Sykes v. United States*, 564 U.S. 1, 9 (2011), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *Harrold v. Hagen*, No. 3:23CV866, 2024 WL 4336745, at *9 (E.D. Va. Sept. 27, 2024); *see* 18 U.S.C. § 924(e)(2)(B) (classifying burglary as a violent felony). The severity of the crime analysis is further bolstered by the fact that a reasonable law enforcement officer would logically consider that a burglary suspect may be armed.

The objective reasonableness of the severity of the crime, as perceived by the officers, including Corporal Painter, is also established by (1) the urgency with which officers responded, driving with emergency lights and sirens activated; (2) the number of officers whose presence was needed to effectuate a safe response for citizens and officers; and (3) the perimeter created around the apartment complex and strategic positioning of the responding officers with their service weapons drawn. (*See* ECF No. 32, Ex. B at p. 1; ECF No. 34, Exs. 1, 2.)

---

³ Plaintiff repeatedly mentions the use of "deadly force." However, the use of a K-9 is not by law considered deadly force and, in the case at hand, the use of the K-9 did not result in death. (*See e.g.*, ECF No. 36 at p. 8 ("which is a misdemeanor that would not justify deadly force.").)

13

In his analysis regarding whether he posed an immediate threat to the safety of the officers or others, Plaintiff claims that merely "investigating a burglary . . . is not enough." (ECF No. 36 at p. 8.) If Corporal Painter had been sitting at a desk in an office investigating how a burglary occurred, that may true. However, the undisputed material facts establish that Corporal Painter, after being summoned by supervision, responded to the scene of a burglary in progress at an apartment complex where the complainant, on scene, provided detailed information and, in response, officers established a perimeter with lethal cover until Corporal Painter and his K-9 arrived on scene. (ECF No. 32, Ex. B. at p. 3.)

In making the statement that investigating a burglary is not enough, Plaintiff is ignoring the mandate that for purposes of qualified immunity, the Court is to consider the facts as an objectively reasonable police officer on scene could perceive them. Not one single officer on scene that day found it legally necessary or even appropriate to enter the apartment in question and attempt to confront the burglary suspect prior to the time Corporal Painter arrived and deployed his K-9. To state the obvious, that is because the severity of the threat to the officers and others, as posed by the suspect under the circumstances presented, was too great of a risk to take without first utilizing the tools available to them, including K-9 Scout.

Plaintiff also takes issue with the fact that Corporal Painter issued his verbal warnings to the suspect from the entrance to the apartment. Plaintiff claims that the numerous commands given by Corporal Painter were inaudible and ineffective, and therefore insufficient under the Fourth Amendment. (*See* ECF No. 36 at p. 9.) This argument fails for several reasons. First, it is clear from the BWC videos of Corporal Painter and Officer Wilson that Corporal Painter's commands were loud and clear when made at the door. Second, the responding officers, including Corporal Painter, did not know the exact location where Plaintiff was hiding in the apartment—he could

14

have been in the bathroom off the hall, the first bedroom, second bedroom, etc. Third, if an officer enters a residence to give a warning, especially in an apartment of such a small size, it defeats the purpose of the K-9, as well as the tactical positioning of officers along the perimeter, all of which are intended to provide safety for the officers from the suspect. Fourth, as discussed above, Plaintiff now claims he could recall that precisely 26 seconds passed from the time Corporal Painter issued his first command to the time K-9 Scout apprehended Plaintiff, which implies Plaintiff heard Corporal Painter's commands and knew of the police presence at the front door. (*See* ECF No. 32 at ¶ 30.) However, instead of complying with the several commands given by Corporal Painter, Plaintiff elected to remain in the back bedroom, at the end of a dark hallway, not visible to officers. That he heard the commands, did not comply, and chose to remain hidden increases the severity of the threat to the officers. *See Putman v. Harris*, 66 F.4th 181, 188 (4th Cir. 2023).

Based on the established material facts and the totality of the circumstances, it was objectively reasonable for Corporal Painter to deploy his police K-9, after giving numerous verbal warnings and commands, to seize a burglary suspect concealed in an apartment. Therefore, Corporal Painter is entitled to qualified immunity and dismissal of all counts of the Second Amended Complaint.

> D. Plaintiff does not dispute Corporal Painter's argument that there is no controlling caselaw that clearly established that Corporal Painter violated Plaintiff's Fourth Amendment rights.

Plaintiff's Memorandum in Opposition ignores the Fourth Circuit case law cited by Corporal Painter in his Motion to Dismiss and accompanying Memorandum that establishes that the use of a K-9 to seize a suspect in a breaking and entering in progress, after giving numerous warnings prior to the deployment of the K-9, is objectively reasonable based on the totality of the

circumstances and therefore does not constitute a Fourth Amendment violation. Not only does Plaintiff not attack or attempt to factually distinguish the caselaw relied upon by Corporal Painter in support of the use of his K-9, but Plaintiff has also not offered a single controlling case that would have put Corporal Painter on notice that the use of a K-9 would be a violation of a burglary suspect's Fourth Amendment rights under these circumstances. When [a plaintiff] "has failed to address an argument made in a dispositive pleading, the Court must accept the argument as conceded." *Yahya v. Barr*, No. 1:20-cv-01150, 2021 WL 798873, at *2 (E.D. Va. Jan. 29, 2021) (citing *United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of the United States of America, et al. v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated, et al.*, 329 F. Supp. 4d 283, 294 (2018)).

The only case cited by Plaintiff in support of his earlier argument that Officer Painter's actions were objectively unreasonable is *Cooper v. Brown*, a Fifth Circuit case that addresses the deployment of a K-9 on a misdemeanor DUI suspect and a dog bite that lasted for approximately one to two minutes after the suspect was detained. *See* 844 F.3d 517 (5th Cir. 2016)[4]. There is no legitimate issue with the length of time that Corporal Painter's K-9 detained the suspect in this case because, as can be seen from the BWC video, as soon as the suspect was seized by the K-9 and the suspect complied with Corporal Painter's commands, Corporal Painter immediately went to the suspect, grabbed onto the K-9's collar, removed the suspect's left hand from the K-9's collar, and pulled the K-9 away from Plaintiff. (*See* ECF No. 34, Ex. 1 at 01:30-01:47.) This all took

---

[4] The plaintiff's injuries in *Cooper* resulted in "years of pain from lower-leg injuries that required multiple surgeries, including reconstruction and skin grafts," which also distinguishes the facts in *Cooper* from the case at hand.

place in less than 20 seconds. Further, the crime at issue in *Cooper*, a DUI, lacked the severity of the crime in this matter—a burglary or breaking and entering in progress.

Because, as of the time of the incident in question, there was no caselaw that clearly established that Corporal Painter's use of his K-9 under these circumstances constituted a violation of Plaintiff's Fourth Amendment rights, nor does Plaintiff contend otherwise, Corporal Painter is also entitled to qualified immunity based on the second prong of the qualified immunity analysis.

## CONCLUSION

For the reasons stated herein, and in the Motion to Dismiss the Second Amended Complaint and Memorandum in Support of the Motion to Dismiss the Second Amended Complaint, Corporal Painter respectfully requests that his Motion to Dismiss the Second Amended Complaint be granted and that the Second Amended Complaint be dismissed in its entirety, with prejudice.

GORDON J. PAINTER

By: /s/ Katherine C. Gill
Julie A. C. Seyfarth (VSB #46207)
Senior Deputy County Attorney
Katherine C. Gill (VSB #87409)
Senior Assistant County Attorney
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, Virginia 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
seyfarthj@chesterfield.gov
gillk@chesterfield.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of March, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By: /s/ Katherine C. Gill
Julie A. C. Seyfarth (VSB #46207)
Senior Deputy County Attorney
Katherine C. Gill (VSB #87409)
Senior Assistant County Attorney
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, Virginia 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
seyfarthj@chesterfield.gov
gillk@chesterfield.gov